**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

SHAOSHAN FENG,

Plaintiff,

v.

RACHEL DOMBROWSKI,
*Clerk of the Appellate Court of Maryland, in her official capacity*, and
GREGORY WELLS,
*Chief Judge of the Appellate Court of Maryland, in his official capacity*,

Defendants.

Civil Action No. 25-0710-TDC

## MEMORANDUM OPINION

Plaintiff Shaoshan Feng, who is self-represented and proceeding *in forma pauperis*, has filed this civil action against Defendants Rachel Dombrowski and Gregory Wells in their official capacities as, respectively, the Clerk and Chief Judge of the Appellate Court of Maryland. In the operative Second Amended Complaint, Feng asserts a claim for a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution arising out of the dismissal of her appeal of a state court divorce judgment based on her failure to supply the required transcripts, which she did not obtain because she could not afford the transcript fees. Defendants have filed a Motion to Dismiss the Second Amended Complaint, or in the Alternative, Motion for Summary Judgment, which is fully briefed. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

## BACKGROUND

Feng was a party in a divorce proceeding, *Chen v. Feng*, No. C-15-FM-22-2132, in the Circuit Court for Montgomery County, Maryland ("the Circuit Court"), in which a merits hearing occurred in July 2023. After issuing an oral ruling on September 8, 2023, the Circuit Court entered a judgment of absolute divorce on September 15, 2023 that also "address[ed] property distribution" between Feng and her ex-husband, Shaomin Chen. Second Am. Compl. ("SAC") ¶ 14, ECF No. 23. In addition to granting the divorce, the court ordered Chen to pay $2,750.00 to Feng and to return all of Feng's personal property within 30 days of the judgment. On October 16, 2023, Feng filed a Notice of Appeal to the Appellate Court of Maryland ("the Appellate Court"). In the Civil Appeal Information Report, Feng stated that the "judge made his decision based on [an] assumption," and she referenced an "agreement which is disputable [and] extremely unfair" to Feng, which she claimed was "falsified" by Chen. Civil Appeal Information Report at 2, Mot. Dismiss Ex. 2, ECF No. 26-4. On that form, Feng also noted that she was not appealing an order relating to "adoption, termination of parental rights, guardianship of the person, custody, or visitation." *Id.*

On February 6, 2024, at the direction of Chief Judge Gregory Wells, Rachel Dombrowski, the Clerk of the Appellate Court, entered an order granting Feng's motion to waive the appellate filing fee. The order further stated, however, that the filing fee waiver "does not waive the requirement for the appellant to order and pay for any transcripts required for this appeal." Order at 1 n.1, Mot. Dismiss Ex. 3, ECF No. 26-5. The Maryland Rules require appellants to order certain transcripts. Specifically, Maryland Rule 8–413 provides that the "record on appeal shall include . . . the transcript required by Rule 8–411." Md. Rule 8–413(a)(2). In turn, Maryland Rule 8–411 states that:

> Unless a copy of the transcript is already on file, the appellant shall order in writing from the court reporter a transcript containing . . . a transcription of (A) all the testimony or (B) that part of the testimony that the parties agree, by written stipulation filed with the clerk of the lower court, is necessary for the appeal or (C) that part of the testimony ordered by the Court.

Md. Rule 8–411(a)(1). The Maryland Rules also provide that the Appellate Court "may dismiss an appeal if . . . the contents of the record do not comply with Rule 8–413." Md. Rule 8–602(c)(4).

The Appellate Court subsequently entered several Orders directing Feng to obtain the required transcripts. On May 1, 2024, the Appellate Court ordered Feng to show cause for why her appeal should not be dismissed based on a failure to obtain the transcripts from her divorce proceedings. After Feng filed a response to the Order to which she attached only the transcript of the September 8, 2023 hearing, on May 20, 2024, the Appellate Court directed Feng to order the transcripts from the three-day divorce merits trial conducted on July 10, 11, and 12, 2023. Then, after Feng filed a response to that Order in which she "ask[ed] that the Court excuse the requirement that she provide the relevant transcripts," on June 14, 2024, the Appellate Court again ordered her to provide the remaining transcripts and stated that if Feng failed to do so within 20 days of the date of the Order, her appeal would be dismissed. Order at 2, Mot. Dismiss Ex. 6, ECF No. 26-8.

On July 17, 2024, after the deadline had passed, Chief Judge Wells dismissed Feng's appeal pursuant to Rule 8–602(c)(4) based on the failure to provide the transcripts. On July 26, 2024, Feng filed a Motion for Reconsideration in which she referenced her inability to pay the estimated several thousand dollars in transcript fees due to financial hardship, including because Chen retained approximately $200,000 of their marital property in the divorce.

After that motion was denied, Feng filed a petition for a writ of certiorari with the Supreme Court of Maryland. On November 26, 2024, the Maryland Supreme Court granted the petition,

vacated the Appellate Court's dismissal of Feng's appeal, and remanded the case for a determination on whether a "newly created program established to provide payment for transcripts for qualifying self-represented litigants is able to cover the cost of [Feng's] transcripts." Order at 3, Compl. Ex. 2, ECF No. 1-2. On remand to the Appellate Court, on November 27, 2024, Chief Judge Wells concluded that Feng was ineligible for financial assistance through the program because it was "limited to appeals involving custody issues," and Feng's appeal was of "a judgment that does not relate to custody." Order at 2, Compl. Ex. 3, ECF No. 1-3. Accordingly, Chief Judge Wells again dismissed Feng's appeal pursuant to Rule 8–602(c)(4).

On December 9, 2024, in the Maryland Supreme Court, Feng filed a Motion to Enforce the Maryland Supreme Court's November 26, 2024 Order. On December 20, 2024, the Maryland Supreme Court denied Feng's motion because "the Appellate Court's November 27 order did not violate this Court's November 26 remand order." Order at 1, Compl. Ex. 4, ECF No. 1-4.

On March 3, 2025, Feng filed the original Complaint in this case, naming the "State of Maryland Judiciary System" as the defendant. Compl. at 1, ECF No. 1. After the Court dismissed the Complaint pursuant to 28 U.S.C. § 1915 based on sovereign immunity and granted Feng leave to amend the Complaint to name individuals as defendants, Feng filed an Amended Complaint naming Clerk Dombrowski and Chief Judge Wells as defendants. In the presently operative Second Amended Complaint, Feng asserts one claim for a violation of the right to due process of law under the Fourteenth Amendment based on the "rigid enforcement of transcript payment requirements, without provision of a reasonable alternative mechanism allowing her to proceed despite inability to pay," which "resulted in denial of meaningful appellate access." SAC ¶ 28. She seeks a declaratory judgment stating that the enforcement of transcript fee requirements in this

case violates due process and injunctive relief requiring Defendants to permit her to proceed with her appeal without paying for transcripts.

## DISCUSSION

In their Motion, Defendants seek dismissal of the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) based on a lack of subject matter jurisdiction, or under Rule 12(b)(6) for failure to state a valid due process claim. Alternatively, Defendants seek summary judgment under Rule 56. Specifically, Defendants assert that (1) this case should be dismissed because Feng's claims are barred by the Eleventh Amendment to the Constitution; and (2) her claims fail because due process does not require that transcript fees be waived for an indigent party in Feng's position.

### I. Legal Standards

In relation to a motion to dismiss under Rule 12(b)(1), it is the plaintiff's burden to show that subject matter jurisdiction exists. *Evans v. B.F. Perkins Co., Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). Rule 12(b)(1) allows a defendant to move for dismissal when it believes that the plaintiff has failed to make that showing. When a defendant asserts that the plaintiff has failed to plead sufficient facts to establish subject matter jurisdiction, the allegations in the complaint are assumed to be true under the same standard as in a Rule 12(b)(6) motion, and "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). When a defendant asserts that facts outside of the complaint deprive the court of jurisdiction, the court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *Kerns*, 585 F.3d at 192. A court should grant a Rule 12(b)(1) motion based on a factual challenge to subject matter jurisdiction

"only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Courts are permitted, however, to consider documents attached to a motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). Here, both parties have attached certain filings from the state court proceedings. Where Feng does not challenge the authenticity of any of the documents attached to the Motion, and where these filings are referenced in the

Second Amended Complaint and are plainly integral to Feng's due process claim, the Court may consider them in ruling on the Motion. The Court therefore will treat the Motion as a Motion to Dismiss only.

## II. Eleventh Amendment

Defendants first argue that they are immune from any claims against them in their official capacities pursuant to the Eleventh Amendment, under which, absent consent, a State, its agencies, and departments are immune from suits in federal court brought by their citizens or the citizens of another State. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Claims against State officials in their official capacities are claims against the State itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). There are, however, three exceptions to the Eleventh Amendment's prohibition on a suit against a State:

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority . . . . Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law . . . . Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court.

*Lee-Thomas v. Prince George's Cnty. Pub. Schs.*, 666 F.3d 244, 249 (4th Cir. 2012) (citations omitted).

Feng argues that the second exception, derived from *Ex parte Young*, 209 U.S. 123, 159–60 (1908), applies here. Under that exception, a plaintiff may advance a claim in federal court against State officials to enjoin them from "engaging in future conduct that would violate the Constitution or a federal statute." *Indus. Servs. Grp., Inc. v. Dobson*, 68 F.4th 155, 163 (4th Cir. 2023) (quoting *Antrican v. Odom*, 290 F.3d 178, 184 (4th Cir. 2002)). The exception applies when the "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)

(quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring in part and concurring in the judgment)). In the Second Amended Complaint, Feng alleges an ongoing due process violation, does not seek monetary damages, and expressly seeks forward-looking declaratory and injunctive relief "to prevent continued application of transcript requirements to her without reasonable alternative accommodation." SAC ¶ 29.

Defendants nevertheless contend that because Feng's state court appeal of the divorce judgment has already been dismissed, Feng necessarily seeks "to retroactively modify state court decisions," and her requested relief is thus "not prospective," such that she cannot proceed under the *Ex parte Young* exception. Mot. Dismiss at 10, ECF No. 26-1. However, to plead "the type of continuing violation for which a remedy may permissibly be fashioned" under *Ex parte Young*, a plaintiff must merely allege a "present, and presumably ongoing" harm stemming from the violation, even if that harm was inflicted by "past actions of the State." *Coakley v. Welch*, 877 F.2d 304, 306 (4th Cir. 1989) (citing *Papasan v. Allain*, 478 U.S. 265, 282 (1986)). Feng has done so here by alleging that she is presently barred from proceeding with her state court appeal and by seeking equitable relief to permit her to proceed with that appeal even without having paid for the required transcripts. Therefore, the Court will not dismiss Feng's claims pursuant to the Eleventh Amendment based on the asserted failure to seek prospective relief.

Defendants, referencing *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021), further assert that the Eleventh Amendment bars Feng's claims because this case "concerns judicial acts," and the *Ex parte Young* exception generally does not provide a basis to permit the entry of injunctions against state court judges or clerks. Reply at 3, ECF No. 31. In *Whole Woman's Health*, the United States Supreme Court held that plaintiffs challenging a Texas abortion statute known as S.B. 8 in federal court could not, pursuant to the *Ex parte Young* exception, obtain an

injunction barring "all state-court clerks from docketing S.B. 8 cases and all state-court judges from hearing them." *Whole Woman's Health*, 142 S. Ct. at 532. In so ruling, the Court stated that *Ex parte Young* "does not normally permit federal courts to issue injunctions against state-court judges or clerks" because they "[u]sually . . . do not enforce state laws as executive officials might" but rather "work to resolve disputes between parties," and that "[i]f a state court errs in its rulings, too, the traditional remedy has been some form of appeal, . . . not the entry of an *ex ante* injunction preventing the state court from hearing cases." *Id.* The Court identified another flaw associated with suits against state court judges and clerks: that where Article III of the Constitution grants to federal courts "the power to resolve only actual controversies arising between adverse litigants," litigants in state court and the judges and clerks who handle their cases "generally are not" adverse to one another, so "no case or controversy exists" between them. *Id.* (citations omitted).

Since *Whole Woman's Health*, some courts have applied the general principle that the *Ex parte Young* exception does not apply to claims against a state court judge or clerk. *See, e.g.*, *Jackson v. Mason*, No. 24-3131, 2025 WL 2528310, at *1, *3 (10th Cir. Sept. 3, 2025) (concluding that, under *Ex parte Young*, a self-represented plaintiff could not sue a state judge or clerk to assert constitutional challenges to the dismissal of a case based on previously imposed filing restrictions against the plaintiff). Others, however, have allowed a claim against a state court judge or clerk to proceed pursuant to *Ex parte Young* and found an Article III controversy between the parties, usually when the case involved a plaintiff who was not a party in the state court case, or where there was a challenge to administrative rather than adjudicatory action. *See, e.g.*, *Courthouse News Serv. v. Gilmer*, 48 F.4th 908, 912–13 (8th Cir. 2022) (concluding that a news agency could sue a court clerk and administrator over the delays in public access to filings caused by a new electronic

filing system); *Argen v. Att'y Gen.*, No. 21-2571, 2022 WL 3369109, at *5 (3d Cir. Aug. 16, 2022) (concluding that a member of the media could sue a family court judge to challenge the judge's gag order against a party).

The United States Court of Appeals for the Fourth Circuit has not decided whether *Ex parte Young* specifically bars a claim against a state court judge or clerk, but it has applied the related principle, as stated in *Whole Woman's Health*, that there is no case or controversy arising from a litigant's dispute with a ruling by a state court judge. In *Frazier v. Prince George's County*, 140 F.4th 556 (4th Cir. 2025), a putative class of pretrial detainees filed suit against state court judges to challenge as a violation of their due process rights the judges' practice of referring bail review matters to the Pretrial Division of the Prince George's County Department of Corrections for a decision on pretrial release. *See id.* at 560–61. The court held that when state court judges are sued by litigants in cases before them, "Article III's requirement of a justiciable controversy is not satisfied where a judge acts in [an] adjudicatory capacity, rather than as an enforcer or administrator," and that "a judge's role is adjudicative when the judge acts as they would in any other case by finding facts and determining law in a neutral and impartial judicial fashion." *Id.* at 562 (citations omitted). The Fourth Circuit thus concluded that the plaintiffs' claims did not satisfy Article III's requirement of a "justiciable controversy between the plaintiffs and the judicial defendants" because the judges were "adjudicating [the plaintiffs'] request[s] for bail" by evaluating their requests, considering certain criteria prescribed in the Maryland Rules, and deciding whether they should be detained, released immediately, or released only if the Pretrial Division could supervise them. *Id.* at 562–63. Such actions are "'function[s] normally performed by a judge' and thus do not create an Article III case or controversy between judges and the litigants before them." *Id.* at 563 (quoting *Reule v. Jackson*, 114 F.4th 360, 366 (5th Cir. 2024)). The court

further concluded that the plaintiffs' proper "remedy against potentially unlawful judicial conduct" is either an appeal or, where an appeal may be unavailable and the plaintiffs were detained, through a petition for a writ of habeas corpus. *Id.* Another circuit has reached a similar conclusion in a case in which a state court litigant sued a state court judge in relation to adjudicatory actions taken by the judge. *See Kellogg v. Nichols*, 170 F.4th 20, 26–31 (2d Cir. 2025) (concluding that, under Article III, litigants could not sue the state court judge who adjudicated and denied their applications for firearm licenses).

Here, Feng is similarly situated to the plaintiffs in *Frazier* in that she has sued a state court judge and clerk for an alleged due process violation arising during the adjudication of her state court case. Chief Judge Wells exercised an adjudicatory function in evaluating her request to proceed without the transcripts required under Rules 8–411 and 8–413 and acting pursuant to Rule 8–602(c)(4) to dismiss her appeal based on the failure to submit the transcripts. These are "functions normally performed by a judge" and therefore "do not create an Article III case or controversy" between Chief Judge Wells and Feng. *See Frazier*, 140 F.4th at 563. Although the plaintiffs in *Frazier* sued judges while Feng has sued both a judge and the Clerk of the Appellate Court, the Court finds no persuasive basis to distinguish between a judge and clerk in this case. *See Whole Woman's Health*, 142 S. Ct. at 532 (treating judges and clerks alike for purposes of determining whether a justiciable controversy existed).

Thus, without deciding whether Feng's claim against a state court judge and clerk may proceed under the *Ex parte Young* exception, the Court finds that the claim fails based on a lack of subject matter jurisdiction because there is no case or controversy. *See Frazier*, 140 F.4th at 566.

## III. Due Process Claim

In the alternative, even if the Court had subject matter jurisdiction to hear Feng's claim, the Court finds that it is also subject to dismissal because she has not alleged facts to support a viable due process claim.

Feng asserts that where she could not afford to pay the cost of the transcripts from her divorce proceedings, the dismissal of her appeal based on her failure to supply the necessary transcripts violated her right to due process of law. The United States Supreme Court has held that, in a criminal case, if a state provides appellate review, it may not "do so in a way that discriminates against some convicted defendants on account of their poverty," and it specifically must provide appellate review to an indigent criminal defendant even if that defendant cannot afford to pay for the required transcripts. *Griffin v. Illinois*, 351 U.S. 12, 18–20 (1956); *see Mayer v. City of Chicago*, 404 U.S. 189, 196–97 (1971) (stating that, for criminal cases, *Griffin* imposes "a flat prohibition against pricing indigent defendants out of as effective an appeal as would be available to others able to pay their own way"). In contrast, in most civil cases, there is no constitutional right to access the courts without fees. Specifically, the Supreme Court has found no such constitutional requirement for indigent litigants seeking to appeal welfare benefit determinations by state agencies, *see Ortwein v. Schwab*, 410 U.S. 656, 659–60 (1973), or to obtain a discharge in a bankruptcy proceeding, *see United States v. Kras*, 409 U.S. 434, 438, 443–45 (1973). In both cases, the Supreme Court concluded that the plaintiffs' primarily financial interests did not rise to a high enough "constitutional level" to overcome the court systems' "rational justification" in seeking to offset costs by imposing fees. *See Ortwein*, 410 U.S. at 659–60; *Kras*, 409 U.S. at 445–47. In light of this distinction between criminal and civil cases, the Supreme

Court has stated that "a constitutional requirement to waive court fees in civil cases is the exception, not the general rule." *M.L.B. v. S.L.J.*, 519 U.S. 102, 114 (1996).

Feng argues that her claim aligns with the rare exceptions to that rule in which the Supreme Court held that as a matter of due process, indigent litigants who could not afford to pay filing fees could not be barred from accessing the courts for the purpose of obtaining a dissolution of a marriage, *Boddie v. Connecticut*, 401 U.S. 371, 380–81 (1971), or to appeal a decree terminating a party's parental status, *M.L.B.*, 519 U.S. at 124, 128. In both instances, the Supreme Court's decisions turned on the fundamental constitutional interests in marriage and familial relations, which, Feng asserts, are also present in her case. *See Boddie*, 401 U.S. at 374; *M.L.B.*, 519 U.S. at 119. *Boddie*, however, did not establish a right to appeal a divorce judgment even absent the ability to pay the filing fee; rather, it held only that indigent litigants must "be afforded an opportunity to go into court to obtain a divorce" in the first instance. *See Boddie*, 401 U.S. at 382. Feng has had that opportunity.

Although *M.L.B.* established that an indigent party has a right to appeal a decree to terminate parental status even absent the ability to pay the filing fee, the Court emphasized that its ruling would not "open floodgates" because parental status termination decrees are distinct "from mine run civil actions, even from other domestic relations matters such as divorce, paternity, and child custody," in part based on the fact that such decrees "wor[k] a unique kind of deprivation" and are "among the most severe forms of state action." *M.L.B.*, 519 U.S. at 127–28 (citation omitted). The Court further found that "the stakes for petitioner . . . —forced dissolution of her parental rights—are large, 'more substantial than mere loss of money.'" *Id.* at 121 (quoting *Santosky v. Kramer*, 455 U.S. 745, 756 (1982)).

Here, in the absence of the ability to appeal, Feng will not lose the ability to dissolve her marriage. That has already occurred. Significantly, as Feng noted in submitting her Notice of Appeal, her appeal does not relate to issues of parental rights or child custody and instead relates only to the division of property. Her appeal therefore is akin to the civil disputes relating to money and property for which the Supreme Court has declined to find a due process right to litigate even absent the ability to pay fees and costs. *See Ortwein*, 410 U.S. at 659–60; *Kras*, 409 U.S. at 444–45.

Where *M.L.B.* expressly limited its holding to the narrow and unique category of cases involving the termination of parental rights, and Feng's appeal does not relate to parental rights or even to child custody and instead relates only to the division of property, the Court finds that Feng has failed to state a valid claim that Defendants violated her due process rights by dismissing her appeal from the divorce judgment based on her failure to submit the required transcripts due to indigency. The Motion will therefore be granted on this basis as well.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the Second Amended Complaint, or in the Alternative, Motion for Summary Judgment, construed as a Motion to Dismiss, will be GRANTED, and the Second Amended Complaint will be DISMISSED. A separate Order shall be issued.

Date: August 18, 2026

THEODORE D. CHUANG
United States District Judge